# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Rosalind Brown, on behalf of herself and
all others similarly situated,

Plaintiffs,

Civ. No. 09-2413 (RHK/FLN)
**MEMORANDUM OPINION
AND ORDER**

v.

Ameriprise Financial Services, Inc., f/k/a
American Express Financial Advisors, Inc.,

Defendant.

---

Susan A. McKay, McKay Law, Apple Valley, Minnesota, for Plaintiffs.

Melissa Raphan, Edward B. Magarian, Michael Iwan, Zeb-Michael Curtin, Dorsey &
Whitney LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

This is a putative class action brought by Plaintiff Rosalind Brown against her

former employer, Defendant Ameriprise Financial Services, Inc., f/k/a American Express

Financial Advisors, Inc. ("Ameriprise"), for race discrimination. Presently before the

Court are two Motions Ameriprise has filed vis-à-vis Brown's Complaint. The first seeks

dismissal of certain of Brown's claims under Federal Rule of Civil Procedure 12(b)(6).

The second seeks partial summary judgment on claims by class members who either

(1) signed releases when their employment with the company ended or (2) entered into

arbitration agreements with the company. Ameriprise has also asked the Court to

"sequence" discovery at this juncture, limiting it to information concerning Brown's claims (not those of other potential class members) and the four guideposts for class certification under Federal Rule of Civil Procedure 23: numerosity, typicality, commonality, and adequacy. For the reasons set forth below, the Court will grant the Motion to Dismiss in part and deny it in part without prejudice, deny the Motion for Partial Summary Judgment without prejudice, and refer the discovery-sequencing request to Magistrate Judge Noel.

## BACKGROUND

Brown, who is African American, worked for Ameriprise for nine years as a Manager in Employee Relations and, later, as a manager in Risk Mitigation. (Compl. ¶ 8.) She is a graduate of Vanderbilt Law School and is a licensed attorney in Tennessee and Minnesota. (Id.) She also holds a Master's degree in labor relations from the University of Massachusetts and, prior to her tenure with Ameriprise, worked as an attorney and field examiner for the National Labor Relations Board. (Id.)

According to Brown, she was not promoted, received poor evaluations, was harassed, and was paid less than other, less-qualified white employees because Ameriprise managers preferred white employees "with whom they socialize." (Id. ¶¶ 8-9.) She further claims that Ameriprise engaged in a pattern and practice of discriminating against African-American employees in evaluation, compensation, and promotion decisions. (Id. ¶ 23.)

Brown filed a charge of discrimination with the Minneapolis Department of Civil Rights on September 2, 2008, which was cross-filed with the EEOC. (Curtin Decl. Ex. 1.)[1] The "particulars" of her charge were as follows:

> I am a Manager with [Ameriprise]. I have been subjected to unfair treatment, belittled, harassed, denied promotional opportunities and denied assistance because of my race/Black. I complained and nothing has been done. I was given an unsatisfactory performance review. I am the only Black Manager and subjected to higher work standards than White Managers. Black employees are forced to resign or threatened with termination. White Employees are treated more favorably and allowed promotional opportunities and training. Black employees are paid less than White employees and/are placed in lower paying positions. It is my belief that the Respondent is trying to force me to resign and/or set me up for failure so that [it] can terminate me.
>
> \*      \*      \*
>
> It is my belief that I have been discriminated against because of my race/Black and in retaliation for complaining. The Respondent has violated my rights under Title VII of the Civil Rights Act of 1964, as amended.

(Id.) Brown alleges that following her charge, the harassment by her superiors increased. (Compl. ¶ 36.) Ultimately, her position was eliminated and, according to the Complaint, her job responsibilities were transferred to less-skilled white employees who were "part of the inner 'good ol' boy' circle." (Id.)

Before the Department of Human Rights completed its investigation into the charge, Brown withdrew it and commenced the instant action against Ameriprise. She

---

[1] The charge is not attached to the Complaint but is expressly referenced therein. (See Compl. ¶ 74.) Accordingly, the Court may consider it in connection with Ameriprise's Motion to Dismiss. See Fed. R. Civ. P. 10(c); Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003). Even if Brown had not referred to the charge in her Complaint, however, the Court could consider it and the documents related thereto (including Ameriprise's response and correspondence between Brown and the Department of Civil Rights) because they are public documents. See Faibisch v. Univ. of Minn., 304 F.3d 797, 802-03 (8th Cir. 2002); Mandel v. M&Q Packaging Corp., No. 3:09-CV-42, 2009 WL 2579308, at \*3 (M.D. Pa. Aug. 18, 2009).

asserts three claims, two of which (Counts 1 and 3) are brought on behalf of a class of "at least 1000" African Americans who worked for the company from December 5, 1999, to the present. (Id. ¶¶ 13, 15.) Specifically, she alleges in Count 1 that Ameriprise violated 42 U.S.C. § 1981 by engaging in a pattern and practice of discrimination against African Americans by (1) paying them less than whites, (2) denying them promotions, (3) giving them poor evaluations, and (4) denying them equal terms and conditions of employment. (Id. ¶ 76.) Similarly, Count 3 alleges that Ameriprise's "policies and practices for determining compensation" and "policies and practices for determining promotions and job transfers" have a disparate impact on African Americans, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Id. ¶¶ 81-82.) Finally, Count 2, which is brought on Brown's behalf alone, alleges that Ameriprise intentionally discriminated against her in a variety of ways due to her race, in violation of Title VII. (Id. ¶¶ 78-79.)

Ameriprise has now moved to dismiss and has separately moved for partial summary judgment. In its Motion to Dismiss, it argues that Count 1 fails insofar as it is brought by class members whose employment ended prior to September 4, 2005, as their claims are barred by the statute of limitations. It next argues that Count 3 must be dismissed because Brown failed to exhaust her administrative remedies. Lastly, it asks the Court to limit discovery at this juncture to Brown's individual claims and issues relating to class certification under Rule 23 of the Federal Rules of Civil Procedure. In the concomitant Motion for Partial Summary Judgment, Ameriprise asks the Court to

dismiss all claims brought by class members who either (1) signed releases when their employment ended or (2) agreed to arbitrate disputes with the company.

## STANDARD OF DECISION

As set forth in more detail below, the Court finds that the Motion for Partial Summary Judgment is premature at this stage of the proceedings. Accordingly, the Court will address only the Motion to Dismiss on the merits, and hence it only sets forth below the standard for evaluating such a motion.

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that in order to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (citation omitted). Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u> at 561 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." <u>Id.</u> at 570.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. <u>Id.</u> at 555-56. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. <u>Id.</u> Accordingly, a well-pleaded complaint will survive a

motion to dismiss even if it appears "that a recovery is very remote and unlikely."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## ANALYSIS

### I.     Brown failed to exhaust Count 3.

The Court begins its analysis with the main thrust of Ameriprise's Motion to Dismiss, exhaustion.  Generally speaking, before filing a Title VII claim, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. E.g., Patterson v. McLean Credit Union, 491 U.S. 164, 181 (1989); Hutson v. Wells Dairy, Inc., 578 F.3d 823, 826 (8th Cir. 2009).  Doing so gives the EEOC "the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."  Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994).  Because the agency cannot investigate a claim about which it has not been notified, an administratively unalleged claim will be deemed unexhausted, meaning it cannot be asserted in a subsequent lawsuit. E.g., Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994).  To "[a]llow[] a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge."  Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 688 (8th Cir. 1998) (quoting Williams, 21 F.3d at 223).

Nevertheless, because the employment-discrimination laws are remedial in nature, courts must construe administrative charges "liberally in order to further the[ir] remedial purposes."  Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002);

accord, e.g., Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886-87 (8th Cir. 1998).  For this reason, it has been repeatedly recognized that a plaintiff may "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."  Id. at 887; accord, e.g., Wedow v. City of Kan. City, Mo., 442 F.3d 661, 672 (8th Cir. 2006); Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004).  Simply put, courts "do not require that subsequently-filed lawsuits mirror the administrative charges."  Id.  Yet, courts also must be careful not to read administrative charges *too* broadly – "there is a difference between liberally reading a claim [that] 'lacks specificity,' and inventing, *ex nihilo*, a claim [that] simply was not made."  Id. (citation omitted).

Here, there is no dispute that Brown filed a charge of discrimination, but Ameriprise argues that the charge is deficient in two ways.  First, it argues that Brown did not make any class-based allegations therein.  Second, it argues that she did not allege any type of disparate-impact claim.  Because Count 3 of the Complaint asserts a disparate-impact claim on behalf of a putative class of Ameriprise employees, the company argues that the claim has not been exhausted for these two separate reasons.  (Mem. in Supp. Mot. to Dismiss at 12-21.)  The Court agrees that Brown did not exhaust her disparate-impact allegations, and accordingly it need not address Ameriprise's argument regarding class-based exhaustion.[2]

_____

[2] In her Opposition Memorandum, Brown appears to conflate Count 1 (the pattern-and-practice claim under 42 U.S.C. § 1981) and Count 3 (the disparate-impact claim under Title VII).  (See Mem. in Opp'n Mot. to Dismiss at 6-7 (referring to "disparate impact/pattern practice").)  But exhaustion of the pattern-and-practice claim is a non-issue, because claims under Section 1981

7

To fully understand the Court's analysis, it is first necessary to set forth the contours of a disparate-impact claim and highlight how such a claim differs from a disparate-treatment claim. As succinctly stated by one court, "the gravamen of a disparate-impact claim is the presence of a neutral employment practice that has a disproportionately adverse impact on a protected class." Welch v. Eli Lilly & Co., No. 1:06-cv-0641, 2009 WL 734711, at *2 (S.D. Ind. Mar. 18, 2009); accord, e.g., Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Lewis v. Aerospace Cmty. Credit Union, 114 F.3d 745, 750 (8th Cir. 1997). To prove discrimination under a disparate-impact theory, a plaintiff "must identify . . . a facially-neutral employment practice [and] demonstrate a disparate impact upon the group to which he or she belongs." Lewis, 114 F.3d at 750. By contrast, a disparate-treatment claim is proved by showing that a defendant treated the plaintiff "less favorably than others because of [her] race, color, religion, sex, or national origin." Teamsters, 431 U.S. at 335 n.15. The two concepts are analytically distinct – disparate treatment involves *intentional* discrimination against an individual (or group of individuals), while disparate impact involves *unintentional* discrimination. E.g., id.; Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1199 (10th Cir. 2006); Vitug v. Multistate Tax Comm'n, 88 F.3d 506, 513 (7th Cir. 1996). Hence, exhaustion of one type of claim typically does not exhaust the other. See, e.g., Diersen v. Walker, 117 Fed. Appx. 463, 466 (7th Cir. 2004); Goethe v.

---

"do not require the administrative exhaustion procedures found under Title VII." Winbush v. State of Iowa by Glenwood State Hosp., 66 F.3d 1471, 1486 (8th Cir. 1995). Accordingly, the Court construes Ameriprise's exhaustion argument as relating only to Count 3.

Cal. Dept. of Motor Vehicles, No. 2:07-CV-1945, 2008 WL 489554, at *5 & n.5 (E.D. Cal. Feb. 20, 2008) (collecting cases); Butler v. Matsushita Commc'n Indus. Corp. of U.S.A., 203 F.R.D. 575, 582 (N.D. Ga. 2001) ("It is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination.").

In the instant case, Brown claims that she exhausted her disparate-impact claim by asserting in her charge that African-American Ameriprise employees were treated less favorably than white employees. (Mem. in Opp'n Mot. to Dismiss at 6-9.) In the Court's view, those allegations were not sufficient because they did not suggest that the alleged discrimination resulted from a *neutral* policy disproportionately affecting African Americans. Indeed, the allegations – "[b]lack employees are forced to resign or threatened with termination," "[w]hite employees are treated more favorably and allowed promotional opportunities and training," and "[b]lack employees are paid less than [w]hite employees and/are placed in lower paying positions" (Curtin Dec. Ex. 1) – imply *intentional* discrimination, not unintentional discrimination. This is particularly true when the allegations are read in context, as they were preceded and followed by assertions that Ameriprise intentionally discriminated against Brown. (Id.)

Simply put, the problem with Brown's charge is that it suggested intentional, not unintentional, discrimination. Although she alleged that African Americans were discriminated against, she failed to indicate (or even suggest) that such discrimination was caused by a neutral Ameriprise policy – in fact, the charge made no mention of any face-neutral policy at all. While a plaintiff need not "specifically use the phrase

'disparate impact,' there is a necessity for the EEOC charge[] to provide that a facially neutral policy or policies resulted in unintended but adverse consequences to the protected class." Welch, 2009 WL 734711, at *3 (internal quotation marks omitted) (quoting Remien v. EMC Corp., No. 04 C 3727, 2008 WL 821887, at *5 (N.D. Ill. Mar. 26, 2008)); accord, e.g., Pacheco v. Mineta, 448 F.3d 783, 792 (5th Cir. 2006); Leo v. Garmin Int'l, No. 09-cv-2139, 2009 WL 3122502, at *5 (D. Kan. Sept. 24, 2009); Garrett v. Fed. Express Corp., No. 08-CV-0061, 2008 WL 2365020, at *3 (N.D. Okla. June 6, 2008); Cavallaro v. Corning, Inc., 93 F. Supp. 2d 334, 340-41 (W.D.N.Y. 2000). Courts have consistently required that discrimination charges "identify or describe the neutral employment practice which is alleged to disproportionately affect protected employees" in order to exhaust disparate-impact claims. Welch, 2009 WL 734711, at *2 (collecting cases). Otherwise, every assertion of intentional discrimination could be read to imply unintentional discrimination, and all claims of disparate treatment would exhaust claims of disparate impact. This would undermine the purposes behind the exhaustion requirement. See also Gordon v. Peters, 489 F. Supp. 2d 729, 734 (S.D. Tex. 2007), aff'd, 2008 WL 162866 (5th Cir. Jan. 16, 2008) (assertion of "institutional sexism" by defendant inadequate to exhaust disparate-impact claim); Boldridge v. Tyson Foods, Inc., No. 05-4055, 2007 WL 846517, at *7 (D. Kan. Mar. 20, 2007), aff'd, 280 Fed. Appx. 723 (10th Cir. 2008) (plaintiff failed to exhaust disparate-impact claim by alleging in EEOC charge that employer told him "[w]e don't hire disabled people").

Here, Brown merely alleged in her charge that African American employees were treated less favorably than whites. As Ameriprise correctly notes, "it is not enough to

simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible" for the purported disparate impact.  (Mem. in Supp. Mot. to Dismiss at 19 (quoting Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005)).)  In Smith, the plaintiffs did "little more than point out that the pay plan at issue [was] relatively less generous to older workers than to younger workers."  544 U.S. at 241.  The same failings in Smith are evident here.

At bottom, because the charge failed to specifically identify any neutral policy – the "cornerstone of an EEO disparate-impact investigation," Pacheco, 448 F.3d at 792 – the Court concludes that Brown did not exhaust her disparate-impact claim (Count 3).

Brown argues, however, that Ameriprise was "well aware that disparate impact was being raised because [its] own position statement submitted to the Minneapolis Department of Human Rights in response to the 'Charge' makes it [] clear that Ameriprise was asked and answered questions related to disparate impact."  (Mem. in Opp'n Mot. to Dismiss at 8.)  But in support, she points to language in Ameriprise's response regarding "evidence of disparate *treatment*."  (Id. (emphasis added) (quoting Brown Decl. Ex. 1).)  As noted above, disparate treatment and disparate impact are entirely different animals.  Nothing about this language indicates that Ameriprise understood Brown to be alleging disparate impact – in fact, it suggests precisely the opposite.  And the Court has reviewed the remainder of Ameriprise's response, and it finds nothing to suggest that the company understood Brown to be asserting a disparate-impact claim.  In any event, Ameriprise's understanding of the charge does not control;

rather, the question is whether Brown's disparate-impact claim falls within "the scope of the EEOC investigation which could reasonably be expected to grow out of [her] charge of discrimination." Duncan, 371 F.3d at 1025 (internal quotation marks and citation omitted). The Court concludes that Brown's charge would not have led to the investigation of a disparate-impact claim, since it makes no mention of any face-neutral policy.[3]

Brown also argues that she was invited by the Department of Human Rights to reply to Ameriprise's response to her charge, and in that reply she specifically invoked the term "disparate impact." (See Brown Decl. Ex. 3.) But the reply does not aid her cause because it, too, fails to identify any face-neutral Ameriprise policy that impacted African Americans disproportionately. Mere use of the term "disparate impact" in a charge is not enough. See Leo, 2009 WL 3122502, at *5 n.7 (letter to EEOC alleging that "the hiring decision of [the defendant] has disparate impact against the over-40 years protected group" insufficient to exhaust disparate-impact age-discrimination claim

---

[3] Brown cites Satz v. ITT Financial Corp., 619 F.2d 738 (8th Cir. 1980), to argue that she exhausted her disparate-impact claim. (Mem. in Opp'n Mot. to Dismiss at 8-9.) But Satz is inapposite, as it concerned a pattern and practice of disparate *treatment*. 619 F.2d at 741. Brown's misplaced reliance on Satz appears to stem from her misapprehension of her pattern-and-practice claim (Count 1) vis-à-vis her disparate-impact claim (Count 3). (See supra note 2.) A pattern-and-practice claim simply allocates the burdens of proof differently than the well-known McDonnell-Douglas framework, when a plaintiff offers proof that "discrimination was the company's standard operating procedure." Craik v. Minn. State Univ. Bd., 731 F.2d 465, 470 (8th Cir. 1984). Such systemic discrimination may be either intentional or unintentional. Hence, although a pattern-and-practice claim might overlap with a disparate-impact claim in certain circumstances, that need not always be true. See 21A Federal Procedure, Lawyers Edition § 50:938 (2010) ("While . . . pattern and practice cases and disparate impact cases often involve systemic discrimination, there still are distinctions."). Here, the pattern-and-practice claim in Count 1 alleges *intentional* discrimination (see Compl. ¶ 76), which is the antithesis of the disparate-impact claim in Count 3.

because, *inter alia*, it did "not identify a specific employment practice or policy which plaintiff contends affected the protected group"); Welch v. Eli Lilly & Co., No. 1:06-cv-0641, 2009 WL 2461119, at *6 (S.D. Ind. Aug. 11, 2009) (EEOC charge invoking term "disparate impact" failed to exhaust disparate-impact claim because it "fail[ed] to identify a neutral employment practice").

For all of these reasons, the Court concludes that Brown has failed to exhaust her disparate-impact claim. Accordingly, Count 3 of the Complaint will be dismissed.[4]

## II. The remaining substantive arguments are premature.

As discussed above, Ameriprise also seeks the following relief in its Motions: (1) dismissal of Count 1 insofar as it is brought by class members whose employment ended prior to September 4, 2005, because their claims are barred by the statute of limitations; (2) summary judgment on claims brought by class members who signed releases when their employment with Ameriprise ended; and (3) summary judgment on claims brought by class members who agreed to arbitrate disputes with the company. In the Court's view, all of these arguments are premature at this early, pre-discovery juncture.

---

[4] Brown requests leave to amend her Complaint in the event it "is deemed insufficient in any manner." (Mem. in Opp'n Mot. to Dismiss at 13.) The Court will deny that request for two reasons. First, leave to amend must be sought by motion, and a proposed amended complaint must accompany the motion. See Fed. R. Civ. P. 15(a)(2); D. Minn. LR 15.1. Brown has done neither. A court does not err in denying leave to amend under such circumstances. See, e.g., Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913-14 (8th Cir. 2002) (affirming denial of leave to amend requested in memorandum opposing motion to dismiss, since plaintiff did not move to amend and failed to specify substance of proposed new allegations). Second, any amendment to Count 3 would be futile. The Court has concluded that this claim fails because Brown did not exhaust her disparate-impact allegations. She cannot rectify that failure by filing an amended complaint.

For example, it might later be agued that the statute of limitations for class members should be tolled for equitable reasons. Because there has yet to be any discovery in this case, however, the Court (let alone Brown) is in no position to opine on that issue. Moreover, the statute of limitations is "an affirmative defense, which the defendant must plead and prove," and as a result "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008); see also Rosemount Cogeneration Joint Venture v. N. States Power Co., Civ. No. 4-90-279, 1991 WL 13729, at *9 (D. Minn. Jan. 18, 1991) (Rosenbaum, J.) (statute-of-limitations defense presents fact questions not amenable to resolution "[o]n a blank record").

Similarly, it might later be argued that any releases or arbitration agreements signed by absent class members (assuming any exist – none have yet been identified) are unenforceable. Ameriprise seeks summary judgment without Brown having had the benefit of discovery "to test the validity" of such agreements. (Mem. in Opp'n Mot. for Summ. J. at 5.) In the Court's view, Ameriprise is not entitled to such relief at this early stage of the proceedings. See, e.g., Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999) ("[S]ummary judgment is proper only after the non-movant has had adequate time to engage in discovery."); Hiraide v. Vast Sys. Tech. Corp., No. C-08-4714, 2009 WL 2390352, at *3 (N.D. Cal. Aug. 3, 2009) (declining to address

enforceability and validity of contract without discovery); <u>Terrell v. Uniscribe Prof'l Servs., Inc.</u>, 348 F. Supp. 2d 890, 894-95 (N.D. Ohio 2004) (same).[5]

## III.   The discovery request will be referred to Magistrate Judge Noel.

Finally, Ameriprise asks the Court to limit discovery at this juncture to Brown's individual claims and issues relating to class certification under Federal Rule of Civil Procedure 23.  But under this Court's Local Rules, "all nondispositive motions, including but not limited to discovery, . . . shall be heard by the Magistrate Judge to whom the matter is assigned."  D. Minn. LR 7.1(a).  Accordingly, the Court refers this portion of Ameriprise's Motion to Magistrate Judge Noel.[6]

---

[5] A party opposing summary judgment on the ground that she has not had an adequate opportunity for discovery typically must file an affidavit under Federal Rule of Civil Procedure 56(f).  Although Brown has not filed such an affidavit here, the Court will liberally construe her Memorandum in Opposition to Ameriprise's Motion for Summary Judgment as such an affidavit.  <u>See, e.g.</u>, <u>Hu v. Village of Maywood</u>, No. 07-cv-7203, 2010 WL 276704, at *5 n.5 (N.D. Ill. Jan. 19, 2010) (collecting cases holding that district court has broad authority under Rule 56(f) and may even deny summary judgment *sua sponte* when appropriate).

[6] Although the Court expresses no opinion on Ameriprise's request, the relief it seeks may be warranted because the Court has <u>serious doubts</u> whether this matter is appropriate for class-action treatment.  <u>Webb v. Merck & Co.</u>, 206 F.R.D. 399 (E.D. Pa. 2002), is instructive.  Like Brown, the <u>Webb</u> plaintiffs alleged a pattern and practice of discrimination against African Americans in job assignments, pay, training, and transfer opportunities, and they purported to represent a class of "all black employees" over a decade-long period.  <u>Id.</u> at 401-02.  The court denied the plaintiffs' motion for class certification for reasons that would appear equally apt here:

> [O]ther than sharing the common position of being black employees of Merck, the plaintiffs' allegations are discrete and individualized.  Plaintiffs were employed in different states, in different divisions, in different facilities and at different levels within the company hierarchy.  Their grievances are not susceptible to generalized proof or defenses.  In essence, this action is nothing more than a consolidation of 20 accounts of individualized disparate treatment.  Plaintiffs have not fully satisfied the commonality and typicality requirements [for class certification].
>
> *      *      *

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1.     Ameriprise's Motion to Dismiss Certain Claims and to Sequence Discovery (Doc. No. 5) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**.  The Motion is **GRANTED** with respect to Count 3 of Brown's Complaint, and that claim is **DISMISSED WITH PREJUDICE**.  The Motion is **DENIED WITHOUT PREJUDICE** with respect to Count 1.  The Motion is **REFERRED** to Magistrate Judge Noel to the extent it requests to sequence discovery; and

2.     Ameriprise's Motion for Partial Summary Judgment (Doc. No. 7) is **DENIED WITHOUT PREJUDICE**.

Date:  April 16, 2010

s/Richard H. Kyle_____
RICHARD H. KYLE
United States District Judge

---

[T]here are just too many individual issues which prevent this action from being certified . . . . [A]ll of the named class members' claims are subject to unique defenses which would require the fact finder to evaluate all legitimate, non-discriminatory reasons for defendant's employment decisions involving each named plaintiff as well as the potentially 5000 class members.  Simply put, in order to resolve each putative class member's claim, the fact finder will be forced to evaluate the individualized facts and circumstances surrounding compensation decisions relating to initial assignments, performance reviews, job postings, promotions and overall compensation.

Id. at 408-09.